IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JASMINE P. DARK, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-3540 |
| | § | |
| HOUSTON METHODIST SAN JACINTO | § | |
| HOSPITAL, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Jasmine P. Dark, brings this action against defendant, Houston Methodist San Jacinto Hospital, for employment discrimination based on disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and based on race and color in violation of 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2, et seq.[1] Pending before the court is Defendant's Motion for Final Summary Judgment (Docket Entry No. 15), and Objections to Plaintiff's Summary Judgment Evidence (Docket Entry No. 25, pp. 5-7). For the reasons stated below, defendant's motion for summary judgment will be granted, defendant's objections to plaintiff's summary judgment evidence will be overruled or declared moot, and this action will be dismissed.

---

[1]Plaintiff's Original Complaint and Jury Demand, Docket Entry No. 1, pp. 3-5.

## I.  **Undisputed Facts**

Plaintiff attended Lamar University in Beaumont, Texas, where she received an Associate of Applied Science in Nursing degree in 2011, and a Bachelors of Science in Nursing in 2012.[2]  In June of 2012, plaintiff began working for defendant as a Registered Nurse I ("RN I").[3]  In October of 2012, plaintiff received an influenza vaccination as required by defendant, except when an employee objects for medical or religious reasons,[4] and experienced a mild adverse reaction.[5]

In July of 2013 plaintiff was promoted to the position of Registered Nurse II ("RN II").[6]  An "RN II is a staff nurse who .

---

[2]Plaintiff's Resume, p. 2, Exhibit 1 to Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition"), Docket Entry No. 22-1, p. 3.

[3]Oral and Videotaped Deposition of Jasmine P. Dark ("Plaintiff's Deposition"), p. 16:5-7, Exhibit A to Defendant's Motion for Final Summary Judgment ("Defendant's MFSJ"), Docket Entry No. 15-1, p. 5.

[4]Id. at 75:9-12, Exhibit A to Defendant's MFSJ, Docket Entry No. 15-1, p. 20.  See also Declaration of Sherri Davis-Sampson ("Davis-Sampson Declaration"), pp. 1-2, Exhibit B to Defendant's MFSJ, Docket Entry No. 15-2, pp. 2-3.

[5]Plaintiff's Deposition, pp. 75:24-76:4, Exhibit A to Defendant's MFSJ, Docket Entry No. 15-1, p. 20 ("Q. And did you have any effects from that? A. Yes.  The burn that's right here on my face still.  I started itching.  Q. Other than the burn, did you have any similar complications - A. No.").

[6]Davis-Sampson Declaration, p. 1, Exhibit B to Defendant's MFSJ, Docket Entry No. 15-2, p. 2.  See also Plaintiff's Deposition, p. 17:1-24, Exhibit A to Defendant's MFSJ, Docket Entry No. 15-1, p. 6.

. . provides direct patient care . . . to a patient team which may include patients with varied and complex needs."[7]

In October of 2013 plaintiff did not object to receiving a second influenza vaccine at work.[8] Plaintiff alleges that after receiving the second influenza vaccine she developed a number of symptoms, including severe swelling, pain, numbness and change of color in her extremities that severely restricts her ability to walk and to stand for long periods of time, and that in December of 2013 she was diagnosed with Unspecified Connective Tissue Disease, i.e., an autoimmune disease caused by the influenza vaccine.[9]

In January of 2014 plaintiff took a leave of absence due to her personal health, and applied for short-term disability ("STD") benefits from Cigna, the administrator of defendant's STD benefits program.[10] In the section of the application to be completed by a health care provider, Dr. Chandra Higginbotham stated: "[P]atient

---

[7]Job Summary, Exhibit P to Defendant's MFSJ, Docket Entry No. 15-16, p. 2. See also Plaintiff's Deposition, p. 18:3-21, Exhibit A to Defendant's MFSJ, Docket Entry No. 15-1, p. 6 (agreeing that the Job Description cited as Exhibit P to Defendant's MFSJ accurately describes the duties of an RN II).

[8]Plaintiff's Deposition, p. 31:13-15 and p. 75:9-19, Exhibit A to Defendant's MFSJ, Docket Entry No. 15-1, pp. 9 and 20.

[9]Id. at 26:3-25, Exhibit A to Defendant's MFSJ, Docket Entry No. 15-1, p. 8.

[10]Davis-Sampson Declaration, p. 2, Exhibit B to Defendant's MFSJ, Docket Entry No. 15-2, p. 3. See also Short-Term Disability Leave Application, Exhibit E to Defendant's MFSJ, Docket Entry No. 15-5.

feeling tired a lot and weak[,] cannot perform job duties."[11]  Cigna denied plaintiff's claim for STD benefits upon finding no medical evidence that she was not able to perform her job duties.[12]  From February to June of 2014 plaintiff appealed Cigna's denial of her claim for STD benefits and submitted additional information from her treating physicians to Cigna.   For example, in February and March of 2014, plaintiff visited Dr. Higginbotham who opined that her symptoms and physical condition rendered her unable to work:

> [Plaintiff's] current diagnoses include unspecified endocrine disorder, unspecified immunity deficiency, unspecified diffuse connective tissue disease (confirmed with Dr. Palwai[.)] . . . It is in my opinion that she is not able to perform her stated duties and kindly request that she be placed on short term disability.[13]

On April 15, 2014, Dr. Sabeen Najam, wrote a letter stating that plaintiff

---

[11]Short-Term Disability Leave Application, Exhibit E to Defendant's MFSJ, Docket Entry No. 15-5, p. 3.

[12]Correspondence from Cigna, Exhibit F to Defendant's MFSJ, Docket Entry No. 15-6, pp. 3-6 (January 24, 2014 letter from Cigna Group Insurance to Jasmine Dark).

[13]Plaintiff's Opposition, Docket Entry No. 22, p. 10 ¶ 8 (citing Exhibit 4 thereto, Medical Records Authored by Dr. Chandra Higginbotham, Docket Entry No. 23-1, pp. 2-3).  See also Physician Reports and Notes, Exhibit G to Defendant's MFSJ, Docket Entry No. 15-7, p. 5.   Defendant objects to the admissibility of Plaintiff's Exhibit 4 as containing hearsay and being unauthenticated, see Defendant's Reply in Support of Its Motion for Final Summary Judgment ("Defendant's Reply"), Docket Entry No. 25, p. 5, but fails to mention that its own Exhibit G titled "Physician Reports and Notes" contains much of the same evidence as contained in Plaintiff's Exhibit 4.   Accordingly, defendant's objection to the court's consideration of Plaintiff's Exhibit 4 for purposes of ruling on the pending motion for summary judgment will be overruled.

is under our care here at Houston Rheumatology Center for diagnoses of Undifferentiated connective disease. She is immunosuppressed due to her disease and medications. She is therefore suggested to avoid having close contact with actively sick patients. She is advised to avoid pediatric and surgical units. Please accommodate this request in her work schedule.[14]

On May 27, 2014, defendant sent plaintiff a letter stating that pursuant to HR Policy 29 her allowed leave would be exhausted on July 1, 2014, unless she returned to work or received an extension as a reasonable accommodation.[15]   HR Policy 29 provided that "leaves of absence of any kind when combined should not exceed six (6) months in any rolling twelve (12) month period, measured backward from the date the leave begins. . .[and that] employment will be terminated if the employee fails to return to work at the end of the approved leave period, unless a request for extension is granted as a reasonable accommodation for a disability."[16]

---

[14]Exhibit 2 to Plaintiff's Opposition, Medical Diagnoses of Jasmine P. Dark, Docket Entry No. 23, p. 3.  See also Physician Reports and Notes, Exhibit G to Defendant's MFSJ, Docket Entry No. 15-7, p. 6.  Defendant objects to the admissibility of Plaintiff's Exhibit 2 as containing hearsay and being unauthenticated, see Defendant's Reply, Docket Entry No. 25, p. 5, but fails to mention that its own Exhibit G titled "Physician Reports and Notes" contains much of the same evidence as contained in Plaintiff's Exhibit 2.  Accordingly, defendant's objection to the court's consideration of Plaintiff's Exhibit 2 for purposes of ruling on the pending motion for summary judgment will be overruled.

[15]Correspondence from Methodist, Exhibit H to Defendant's MFSJ, Docket Entry No. 15-8.

[16]Policy HR 29, Exhibit D to Defendant's MFSJ, p. 1 ¶¶ I.B and I.D, Docket Entry No. 15-4, p. 2.

On June 3, 2014, plaintiff sent defendant a letter "to request an indefinite extension" of her leave of absence.[17]

On June 13, 2014, defendant's Human Resources Director, Sherri Davis-Sampson, replied to plaintiff by email stating:

> I am so very sorry for everything you are going through. I want you to know that we are reviewing your request for extended leave. We will not terminate your employment with Methodist while we are in the appeal process for disability coverage. We will consider extending your leave for some longer period of time. I am hopeful that having the physicians speak will allow us to move forward with all of this very quickly.[18]

On June 25, 2014, Cigna upheld its decision denying plaintiff's claim for STD benefits.[19]

---

[17]Correspondence from Jasmine Dark, Exhibit I to Defendant's MFSJ, Docket Entry No. 15-9, p. 2.

[18]Email from Sherri Davis-Sampson, Exhibit J to Defendant's MFSJ, Docket Entry NO. 15-10.

[19]Correspondence from Cigna, Exhibit F to Defendant's MFSJ, Docket Entry No. 15-6, p. 7 (February 11, 2014, letter notifying plaintiff that "on February 5, 2014 we received Office Visit Notes from your treating physician(s). This information was reviewed and does not change our prior decision."); pp. 9-10 (April 2, 2014, letter notifying plaintiff that after reviewing her claim, Cigna decided to uphold its prior decision denying it, and that she could seek a second appeal); pp. 11-12 (April 24, 2014, letter acknowledging receipt of request for second appeal); pp. 13-15 (June 6, 2014, letter upholding prior decision to deny plaintiff's claim for STD); pp. 16-17 (June 25, 2014, letter notifying plaintiff that "[i]n an effort to clarify your restrictions and limitations, we requested that our staff Medical Director, Board Certified in Occupational Medicine, engage in telephonic discussions with your treating providers, Dr. Higgenbotham, Dr. Legall-Johnson and Dr. Najam. The telephonic discussions took place and did not change our prior determinations, as outlined in the attached letter dated June 6, 2014.").

On June 30, 2014, Dr. Higginbotham wrote a letter stating that plaintiff was still unable to work:

> This letter is to inform you that patient Jasmine Dark is still unable to return to work as she has been diagnosed with multiple gastrointestinal infections to include yeast and parasites.  Please make the proper allowances and feel free to contact the office with any questions or concerns regarding this matter.[20]

On July 7, 2014, plaintiff wrote a letter to defendant requesting a reasonable accommodation:

> The purpose of this letter is to provide written notice [of] request for a reasonable accommodation within my physicians' medical restrictions. . .
>
> . . .
>
> If a reasonable accommodation can't be provided, I would like to request [] an extension to my leave of absence due to my disabling condition.  I would request that Houston Methodist communicate with Cigna regarding my STD/LTD benefits as they have indicated I'm not allowed to have any more appeals.  However, I was informed that Cigna was told to not make a final decision on my disability claim until after I see Dr. Desai on July 2 at 815 a.m. as requested by Houston Methodist. Cigna ignored my diagnoses of multiple infections even after speaking to my three physicians. . .[21]

On August 8, 2014, Cigna reaffirmed its decision to deny plaintiff's application for STD.[22]

───────────────

[20]Plaintiff's Opposition, Docket Entry No. 22, p. 11 ¶ 9 (citing Exhibit 2, Medical Diagnoses of Jasmine P. Dark, Docket Entry No. 23, p. 2).

[21]Correspondence from Jasmine Dark, Exhibit L to Defendant's MFSJ, Docket Entry No. 15-12, and Exhibit 6 to Plaintiff's Opposition, Docket Entry No. 23-3.

[22]Correspondence from Cigna, Exhibit F to Defendant's MFSJ,
(continued...)

On October 1, 2014, defendant sent plaintiff a letter stating that if she did not return to work as an RN II by October 3, 2014, her employment would be terminated because her eligible leave had been exhausted.  In pertinent part defendant's letter stated:

> According to HR 29, "All leave of absence of any kind when combined cannot exceed six (6) months in any twelve (12) month period." Your absence more than exceed[s] the maximum amount allowed under HR 29.
>
> To date, you have not returned to work, nor does it appear that you will return any time soon . . . As a result, I am writing to notify you that your request for accommodation, as an extension of your medical leave, is ending. We have extended your employment through Friday, October 3, 2014.  If you are unable to return to work with or without a reasonable accommodation by this date, your employment with Methodist will be terminated.
>
> If you are unable to return to the positions of Registered Nurse II, by October 03, 2014, you may want to review open positions with Houston Methodist at: Houstonmethodist.org.  Should you find a position for which you are reasonably qualified and able to perform with or without accommodation, and offered the position, in the next 30 days (before October 31st), you may be reinstated with no loss of tenure.  You will need to apply for positions through our Methodist Internet site, noted above.[23]

On October 3, 2014, defendant terminated plaintiff's employment because plaintiff did not return to her RN II position, and exceeded the permissible leave under HR Policy 29.[24]

---

[22](...continued)
Docket Entry No. 15-6, p. 17.

[23]Correspondence from Sherri Davis-Sampson, Exhibit M to Defendant's MFSJ, Docket Entry No. 15-13.

[24]Davis-Sampson Declaration, p. 3, Exhibit B to Defendant's
(continued...)

## II.  **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  Id.  Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  Id.

---

[24](...continued)
MFSJ, Docket Entry No. 15-2, p. 4.

### III.  **Analysis**

Plaintiff's complaint asserts claims under the ADA for disability discrimination and under § 1981 and Title VII for race and color discrimination based on allegations that defendant wrongfully discharged her and failed to reasonably accommodate her known disability.  Defendant argues that it is entitled to summary judgment because plaintiff is unable to present evidence capable of establishing the essential elements of her claims.[25]  Plaintiff argues that genuine issues of material fact preclude the court from granting defendant's motion for summary judgment.[26]  Although plaintiff's complaint arguably asserts claims for wrongful discharge under the ADA, § 1981, and Title VII,[27] in response to defendant's motion for summary judgment plaintiff states that she is not pursuing claims for wrongful discharge.[28]

---

[25]Defendant's MFSJ, Docket Entry No. 15; Defendant's Reply, Docket Entry No. 25.

[26]Plaintiff's Opposition, Docket Entry No. 22, pp. 12-20, ¶¶ 12-34.

[27]Plaintiff's Original Complaint and Jury Demand, Docket Entry No. 1, pp. 2-3 ¶ 7.

[28]Plaintiff's Opposition, Docket Entry No. 22, p. 12 ¶ 12 ("Plaintiff is not alleging that Defendant discriminatorily terminated her in violation of the ADA.  Just that Defendant could have, should have, and was required to provide a reasonable accommodation to her under the specific circumstances of this case but failed to do so."); and id. at pp. 18-20 ¶¶ 30-34 (arguing only that defendant discriminated against her on the basis of race by failing to make a reasonable accommodation for her disability).

**A.   Defendant is Entitled to Summary Judgment on Plaintiff's ADA Claim for Disability Discrimination**

Defendant argues that it is entitled to summary judgment on plaintiff's ADA claim for disability discrimination because plaintiff was not a "qualified individual with a disability," and even if she was, defendant was not required to accommodate her disability by extending her leave of absence indefinitely.[29] Asserting that "[s]ince receiving the influenza vaccine on October 29, 2013, [she] was diagnosed with undifferentiated connective tissue disease, and other severe autoimmune illnesses, such as Reynaud's phenomenon,"[30] plaintiff argues that defendant is not entitled to summary judgment on her ADA claim because at all relevant times she had a disability as is defined by the ADA, she advised defendant of her disability, and defendant violated the ADA by failing to provide a reasonable accommodation for her physical limitations, and by failing to engage in an interactive process to identify a reasonable accommodation.[31]

---

[29]Defendant's MFSJ, Docket Entry No. 15, pp. 13-16.

[30]Plaintiff's Opposition, Docket Entry No. 22, p. 9 ¶ 7.  <u>See also id.</u> at 11 ¶ 11 ("That Plaintiff's condition constitutes a disability under the ADA cannot seriously be contested.  Nor can the fact that Plaintiff advised Defendant of the disability be seriously disputed.  Defendant has not contested these threshold issues in its summary judgment memoranda.").

[31]<u>Id.</u> at 12-18 ¶¶ 12-29.

1.   Applicable Law

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees . . . and other terms, conditions, and privileges of employment.'" Rodriguez v. ConAgra Grocery Products Co., 436 F.3d 468, 476 (5th Cir. 2006) (quoting 42 U.S.C. § 12112(a)).  Discrimination includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless . . . the accommodation would impose an undue hardship."  42 U.S.C. § 12112(b)(5)(A).

> [A] plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations.

Feist v. Louisiana Department of Justice, Office of the Attorney General, 730 F.3d 450, 453 (5th Cir. 2013).

2.   Application of the Law to the Undisputed Facts

Defendant does not dispute that plaintiff is disabled, or that it knew about her alleged disability and physical limitations.  At issue is whether plaintiff was a "qualified individual" and whether defendant failed to engage in an interactive process and failed to make a reasonable accommodation for her limitations.

-12-

(a)   The Court Assumes Plaintiff Is Disabled

Plaintiff's ADA claim for failure to accommodate requires a showing that she is "disabled" within the meaning of the ADA. <u>See Dupre v. Charter Behavioral Health Systems of Lafayette Inc.</u>, 242 F.3d 610, 613 (5th Cir. 2001). The ADA defines "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). <u>See Atkins v. Salazar</u>, 677 F.3d 667, 675 (5th Cir. 2011)(per curiam). Whether an impairment is substantially limiting depends on its nature and severity, its duration or expected duration, and its permanent or expected permanent or long-term impact. <u>Dupre</u>, 242 F.3d at 614 (citing 29 C.F.R. § 1630, App., § 1630.2(j)). Whether an individual suffers from a disability is determined on a case-by-case basis based on evidence that shows the effect of the impairment on the individual's life. <u>Albertson's, Inc. v. Kirkingburg</u>, 119 S. Ct. 2162, 2169 (1999). Because plaintiff has submitted letters from her treating physicians stating that her illnesses and the physical symptoms they cause prevent her from performing the duties of her job as a RN II, and because defendant does not dispute that plaintiff is disabled, the court assumes without deciding that plaintiff is disabled.

(b)   Plaintiff Was Not a "Qualified Individual"

An employee is a "qualified individual" under the ADA if she, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff must therefore either explain why she did not require any change in her employment conditions or point to a reasonable modification of the conditions of her employment that would enable her to fulfill the requirements of her job. Asserting that plaintiff has conceded that she could not perform the essential functions of her RN II position, defendant argues that plaintiff was not a "qualified individual with a disability," and that the court's analysis should stop here.

Citing *Daugherty v. City of El Paso*, 56 F.3d 695, 698-99 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 1263 (1996), plaintiff argues that the Fifth Circuit has rejected the defendant's argument because the term "qualified individual with a disability" is defined as someone who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds **or desires**."[32]   Plaintiff argues that

> [t]he *Daugherty* Court ruled that an existing employee seeking a reassignment to a vacant position after the onset of a disability also falls within the definition of "qualified individual" if, with or without a reasonable accommodation, *she can perform the essential functions of*

---

[32]*Id.* at 13-14 ¶ 16 (emphasis in original).

-14-

> *the employment position to which she seeks reassignment.*[33]

While plaintiff correctly describes the Fifth Circuit's holding in Daugherty as standing for the principle that when a disability renders an employee unable to perform the essential functions of his or her position, the employer is required to consider reassignment to a vacant position as a reasonable accommodation, the Fifth Circuit's holding in Daugherty does not require employers "to find or create a new job for [the plaintiff]." Id. at 700. See also Liner v. Hospital Service District No. 1 of Jefferson Parish, 230 Fed. App'x. 361, 364 ("[W]e are not saying that [the employer] was required to give [the plaintiff] another position in order to reasonably accommodate his disability.").

Asserting that she requested reasonable accommodations be made to enable her to remain employed despite her disability, plaintiff argues that the defendant violated the ADA by failing to engage in an interactive process with her to determine if the following accommodations were reasonable: (1) that she be allowed to work from home ("telecommute"); and (2) that she be reassigned to a non-patient care position. Citing a job description for the position of Clinical Documentation Specialist dated March of 2013, and a list of jobs copied from an internet website, plaintiff argues that when she requested reassignment, "several non-patient care

---

[33]Id.

positions were vacant to which Defendant could have reassigned [her] in response to her request for a reasonable accommodation."[34] Plaintiff also argues that defendant advised her that one of its employees, Tammy Robinson, would be assigned to assist her in finding a new job for which she could apply, but that defendant failed to follow through on this promise of assistance.[35] Plaintiff also argues that

> a reasonable juror could conclude that Defendant failed to engage in the interactive process between employer and employee that the ADA requires. Rather than have a meeting with Plaintiff and engaging in fruitful discourse about her limitations **together**, Defendant's Director of Human Resources, Sherri Sampson, unilaterally decided that it would not make a reasonable accommodation and told Plaintiff that because Plaintiff could not perform patient care from home, reassigning her to a telecommuting job was not "a reasonable accommodation," in response to Plaintiff's request for the accommodation of being reassigned to a position that would allow her to work from home. However, as outlined above, so long as she was qualified for any other position that permitted her to perform non-patient care duties, Defendant was required to reassign her to that position, even if it did not involve patient care.[36]

Missing from plaintiff's briefing is any evidence from which a reasonable fact finder could conclude that plaintiff was, in fact, qualified for any vacant, non-patient care position to which she could have been reassigned.

---

[34]Id. at 16 ¶ 24 (citing Exhibit 7 to Plaintiff's Opposition, Docket Entry No. 22-7).

[35]Id. at 16-17 ¶ 25.

[36]Id. at 17 ¶ 27 (citing Exhibit 9 to Plaintiff's Opposition, August 5, 2014, email from Sherri Davis-Sampson to plaintiff).

### (1) Plaintiff Has Failed to Cite Evidence Capable of Proving that She Was Qualified for an Available, Non-Patient Contact Position

Plaintiff initiated a discussion about reassignment as a reasonable accommodation in a July 7, 2014, letter written after learning that Cigna had decided to uphold its denial of her claim for STD benefits and that no further appeals would be allowed. Plaintiff wrote:

> The purpose of this letter is to provide written notice [of] request for a reasonable accommodation within my physicians' medical restrictions. I have been diagnosed with unspecified mixed connective tissue disease, Raynaud's disease, irritable bowel syndrome, hiatus hernia, erosive gastritis, esophagitis, major depressive disorder, and anxiety. . .
>
> I'm currently immunocompromised with an IgM of 43 due to my multiple medications including: Plaquenil 200mg daily, Imuran 100mg daily, Medrol 4mg PRN symptoms, and Medrol 40mg every 3-4 weeks intramuscular injection. . . . I have suffered from multiple infections including blastocystis hominis parasites in my stool (March 2014), Group B strep in my urine (May 2014), frequent urinary tract infections and bladder infections (February 2014-May 2014), Candida in my esophagus (May 2014) and a newly identified pathogen in my stool as I was informed by Dr. Michelle Legall['s] office this morning. I attended the psychiatrist appointment with Dr. Desai that was requested by Houston Methodist, but during the appointment with him, I got sick and vomited twice. His office workers witnessed me vomiting that morning.
>
> On July 5, 2014, I attended a session with my counselor Rosemary Behrens, MA, LPC however; before my session began I had an episode of stool incontinence. My disabled veteran mother had to bring me a complete set of changing clothes to my counselor's office. Not to include, I am being treat[ed] for parasites and pathogens in my stool at this moment. My psychiatrist Dr. Dhatt feel[s] that I'm still suffering from depression due to my illness, employment and compensation concerns. Therefore he has changed my medication.

> Therefore, I'm requesting that an accommodation be
> considered for me due to my medical condition causing
> parasitic infections and stool incontinence.  I have an
> appointment with my physician Dr. Michelle Legall
> 7/7/2014 at 3 p.m. after speaking with her Nurse
> Practitioner [] this morning.  She indicated I couldn't
> work due to my frequent infections and incontinence
> unless I work from home.  Dr. Higginbothom has also
> indicated this.[37]

At her deposition plaintiff testified that her physicians told her

that she was not to have any patient contact.[38]  Therefore, the only

reasonable accommodation plaintiff sought was reassignment to a job

that did not require patient contact.  As evidence that defendant

had a position that did not require patient contact, plaintiff

cites a job description for the position of Clinical Documentation

Specialist dated March of 2013.[39]

---

[37]Correspondence from Jasmine Dark, Exhibit L to Defendant's
MFSJ, Docket Entry No. 15-12, and Exhibit 6 to Plaintiff's
Opposition, Docket Entry No. 23-3.

[38]Plaintiff's Deposition, p. 117:21-25, Exhibit A to
Defendant's MFSJ, Docket Entry No. 15-1, p. 31 ("Q. You would agree
with me that your physician said you were not to have any patient
contact, correct?  A. Yes.  I agree with that.  Q. That was from
Dr. Higganbotham?  A.  Dr. Higganbotham, Dr. Sabeen Najam as
well.").

[39]"Job Details," Exhibit 7 to Plaintiff's Opposition, Docket
Entry No. 22-7, pp. 2-3).  Defendant objects to the admissibility
of this particular job description, see Defendant's Reply, Docket
Entry No. 25, pp. 5-6, but offers evidence that there was a
Concurrent Quality Reviewer position in the Performance Improvement
department matching that description, open from August 2014 through
October 2014.  See Defendant's MFSJ, Docket Entry No. 15, p. 15
(citing Davis-Sampson Declaration, pp. 2-3, Docket Entry No. 15-2,
pp. 3-4 (discussing Current Quality Reviewer position)).
Accordingly, defendant's objection to the court's consideration of
Plaintiff's Exhibit 7 for purposes of ruling on the pending motion
(continued...)

As evidence that plaintiff's request for reassignment to a position that would allow her to work from home and did not require patient contact was unreasonable as a matter of law,[40] defendant cites the declaration of its Human Resource Director, Davis-Sampson. Davis-Sampson stated that "[a]ll Registered Nurse II positions at Houston Methodist have patient contact and work on the hospital floor caring for patients,"[41] and that "Houston Methodist does not offer any Registered Nurse position that does not require patient contact or care."[42]  Davis-Sampson also stated:

> Plaintiff has testified there was an open "documentation nurse/nurse review" position near the time of her termination.  There was a Concurrent Quality Reviewer position in the Performance Improvement department matching that description, open from August 2014 through October 2014.  This position would still require the employee to go on the hospital floor to nursing units to pull patient data.  All Case Managers . . . also interact with patients on the hospital floor.[43]

Plaintiff has not cited any evidence capable of contradicting Davis-Sampson's testimony that Houston Methodist does not have positions for registered nurses that do not require patient contact, or that the Concurrent Quality Reviewer position in the

---

[39](...continued)
for summary judgment will be overruled.

[40]Defendant's MFSJ, Docket Entry No. 15, p. 13.

[41]Davis-Sampson Declaration, p. 1, Exhibit B to Defendant's MFSJ, Docket Entry No. 15-12, p. 2.

[42]Id.

[43]Id. at 2-3, Docket Entry No. 15-2, pp. 3-4.

Performance Improvement department open from August 2014 through October 2014 required the employee to go to nursing units on the hospital floor to pull patient data and to interact with patients. Nor has plaintiff cited any evidence capable of proving that she was qualified for any existing position that did not require patient contact, or that any such position was vacant at or near the time she sought reassignment as a reasonable accommodation. "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant." Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 810 (5th Cir. 1997), cert. denied, 118 S. Ct. 1050 (1998). "The plaintiff bears the burden of proving that an available position exists that [s]he was qualified for and could, with reasonable accommodations, perform." Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007). It is undisputed that plaintiff can no longer perform jobs that require patient contact. Moreover, plaintiff has failed to cite evidence capable of proving that she was qualified for any position that did not require patient contact, or even if she was qualified, that any such position was available at or near the time she sought a reasonable accommodation. For these reasons, the court concludes that plaintiff has failed to raise a genuine issue of material fact as to whether she was a qualified individual with a disability for whom reassignment to another position would have constituted a reasonable accommodation.

**(2)  Plaintiff Has Failed to Cite Evidence Capable
of Proving that Defendant Violated the ADA by
Failing to Engage in an Interactive Process**

Quoting <u>Salem v. Houston Methodist Hospital</u>, Civil Action
No. 4:14-1802, 2015 WL 6618471, at * 8 (S.D. Tex. October 30,
2015), and <u>Picard v. St. Tammany Parish Hospital</u>, 423 Fed. App'x.
467 (5th Cir. 2011)(per curiam), defendant responds to plaintiff's
argument that it violated the ADA by failing to engage in an
interactive process to find a reasonable accommodation for her
disability, by asserting:

> When there is a "complete absence of evidence of any
> possible accommodation" — as there is here — even if a
> defendant has failed to engage in the interactive
> process, it "does not alter the outcome of the case."
> Plaintiff has not offered *any* evidence of available
> positions at Houston Methodist for which she could
> perform the essential functions of the position with or
> without a reasonable accommodation.  As a result,
> Plaintiff has failed to meet her burden to prove a fact
> issue exists as to whether Houston Methodist failed to
> accommodate her alleged disability.[44]

Once an employee requests an accommodation for a disability,
ADA regulations state that "it may be necessary for the [employer]
to initiate an informal, interactive process" designed to identify
reasonable accommodations.  29 C.F.R. § 1630.2(o)(3).  <u>See also</u>
<u>Taylor v. Principal Financial Group, Inc.</u>, 93 F.3d 155, 165 (5th
Cir.), <u>cert. denied</u>, 117 S. Ct. 586 (1996) ("[T]he employee's
initial request for an accommodation . . . triggers the employer's
obligation to participate in the interactive process of determining

---

[44]Defendant's Reply, Docket Entry No. 25, p. 15.

one."). "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." Cutrera v. Board of Supervisors of Louisiana State University, 429 F.3d 108, 112 (5th Cir. 2005) (citing Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 736 (5th Cir. 1999)). "An employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended." Cutrera, 429 F.3d at 113. See also Jenkins, 487 F.3d at 316 ("When no reasonable accommodation can be made to the plaintiff's prior job, he may be transferred to another position."). However, failure to participate in an interactive process does not by itself violate the ADA. See Picard, 423 Fed. App'x. at 469-70 (rejecting argument that failure to engage in interactive process constitutes a per se violation of the ADA).

Here, plaintiff argues that defendant failed to engage in the interactive process, but her own evidence contradicts that argument by showing that Davis-Sampson did, in fact, discuss plaintiff's limitations with plaintiff, and ruled out the possibility that telecommuting from home would constitute a reasonable accommodation because all registered nurse positions at Methodist Hospital

-22-

require patient contact.[45]   Davis-Sampson describes defendant's

participation in the interactive process as follows:

> In a second letter received in July 2014, Plaintiff
> requested an accommodation based on her medical
> restrictions and indicated she would only work from home.
> In order to allow Plaintiff to work as an RN II, would
> require the elimination of some of the essential
> functions of her job — patient care, patient contact, and
> attendance.  I tried to work with Plaintiff to find her
> suitable employment.  I discussed with the Chief Nursing
> Officer whether Plaintiff could work from home, but we
> determined she could not perform the essential functions
> of her job from home.
>
> . . .
>
> I encouraged Plaintiff to look for and apply to different
> positions within the Houston Methodist system, but as of
> the date of this declaration, I can find no record of
> Plaintiff applying for any positions since she took her
> leave of absence.   Plaintiff refused to come to the
> hospital to meet with me or to consider other nursing
> positions with less patient contact.[46]

Plaintiff does not dispute that no reasonable accommodation

existed that would have allowed her to perform the essential

functions of her job as an RN II.  For the reasons stated in

§ III.A.2(b), above, the court has already concluded that plaintiff

has failed to cite evidence from which a reasonable fact finder

could conclude that she was a qualified individual with a

disability because she failed to present evidence that defendant

---

[45]Plaintiff's Opposition, Docket Entry No. 22, p. 17 ¶ 27
(citing Exhibit 9 to Plaintiff's Opposition, August 5, 2014, email
from Davis-Sampson to plaintiff).

[46]Davis-Sampson Declaration, p. 2, Exhibit B to Defendant's
MFSJ, Docket Entry No. 15-12, p. 3.

had or had available at or near the time she sought a reasonable accommodation any position that did not require patient contact for which she was qualified.  Absent evidence from which a reasonable fact finder could conclude that a job existed to which plaintiff could have been reassigned as a reasonable accommodation, defendant's failure to participate in the interactive process could not violated the ADA because the failure to engage in the interactive process could not have led to the failure to reasonably accommodate plaintiff's disability.  See Silva v. City of Hidalgo, Texas, 575 Fed. App'x. 419, 424 (5th Cir. 2014) ("[E]ven if a genuine issue of material fact exists as to whether the [employer] participated in the interactive process in good faith, its dereliction cannot be said to have *led to* a failure to reasonably accommodate [the employee] because there is no evidence that a reasonable accommodation was feasible.").

> (c)   Indefinite Leave of Absence Does Not Constitute a Reasonable Accommodation

Plaintiff argues that she requested an extended leave of absence be granted only if a reasonable accommodation could not be worked out.[47]   Plaintiff initiated a discussion about reasonable

---

[47]Plaintiff's Opposition, Docket Entry No. 22, p. 16 ¶ 23.

accommodations in a June 3, 2014, letter to defendant requesting an indefinite leave of absence.[48]  Plaintiff wrote:

> The purpose of this letter is to provide written notice to request an extension of my Leave of Absence.  I would like to request an indefinite extension in a leave of absence until I'm able healthy and able to work as a Registered Nurse again at San Jacinto Houston Methodist Hospital.  I received written notice from Houston Methodist that my employment will be terminated on July 01, 2014 in accordance with HR Policy 29, "All leaves of absence of any kind when combined cannot exceed six (6) months in any twelve (12) month period."[49]

On June 13, 2014, defendant's Human Resources Director, Sherri Davis-Sampson, replied to plaintiff by email stating that defendant was reviewing her request for extended leave, and that defendant would not terminate her employment while she was appealing her application for disability benefits.[50]  On June 25, 2014, Cigna issued its final decision upholding its denial of plaintiff's application for STD benefits.[51]  On July 7, 2014, plaintiff wrote a second letter requesting a reasonable accommodation within her physicians' medical restrictions, and "[i]f a reasonable

---

[48]Correspondence from Jasmine Dark, Exhibit I to Defendant's MFSJ, Docket Entry No. 15-9, p. 2.  <u>See also</u> Correspondence from Methodist, Exhibit H to Defendant's MFSJ, Docket Entry No. 15-8.

[49]Correspondence from Jasmine Dark, Exhibit I to Defendant's MFSJ, Docket Entry No. 15-9, p. 2.

[50]Email from Sherri Davis-Sampson to plaintiff, Exhibit J to Defendant's MFSJ, Docket Entry NO. 15-10.

[51]Correspondence from Cigna, Exhibit F to Defendant's MFSJ, Docket Entry No. 15-6, p. 16.

accommodation can't be provided, . . . an extension to my leave of absence due to my disabling condition."[52]

Plaintiff's request in June of 2014 was for additional leave to see if there was a possibility that she could recover and return to work sometime in the future.  Although plaintiff did not provide an estimate of when she could return to work, defendant did agree to extend her leave of absence beyond July 1, 2014, the date that her six-month leave period was set to expired.  Defendant told plaintiff that her employment would not be terminated while the appeal of her claim for STD benefits was pending.  Under Fifth Circuit precedent, neither plaintiff's initial June 3, 2014, request for additional leave, nor her second July 7, 2014, request for additional leave constituted a request for a viable reasonable accommodation because neither of plaintiff's requests for additional leave was accompanied by any estimate of the date on which she expected to be able to return to work.[53]  Because plaintiff has never provided defendant an estimate of when she could resume the duties of her job as an RN II, and because under Fifth Circuit precedent, "[r]easonable accommodation does not

---

[52]Correspondence from Jasmine Dark, Exhibit L to Defendant's MFSJ, Docket Entry No. 15-12, p. 3, and Exhibit 6 to Plaintiff's Opposition, Docket Entry No. 23-3, p. 3.

[53]See Plaintiff's Deposition, p. 25:8-12, Exhibit A to Defendant's MFSJ, Docket Entry No. 15-1, p. 8 ("Q. So is it fair to say that when you asked for an extension of a leave of absence, that you never provided Houston Methodist with any kind of finite date or time period?  A. Yes.").

require [an employer] to wait indefinitely for [the employee's] medical conditions to be corrected," <u>Rogers v. International Marine Terminals, Inc.</u>, 87 F.3d 755, 760 (5th Cir. 1996), plaintiff has failed to cite evidence capable of proving that her request for an extended leave of absence constituted a reasonable accommodation. <u>See</u> <u>id.</u> (describing argument that employer was required to provide indefinite leave as a reasonable accommodation as "meritless"). <u>See also</u> <u>Amsel v. Texas Water Development Board</u>, 464 F. App'x 395, 400 (5th Cir. 2012) (per curiam) ("The question here is whether [plaintiff] was qualified at the time his position was eliminated. . . his . . . leave had been exhausted, and he gave [defendant] no indication of when he would again . . . return to work.").

3.  <u>Conclusions</u>

Because plaintiff has failed to present evidence capable of proving that any reasonable accommodation existed that would have allowed her to perform the essential functions of her position as an RN II, because plaintiff has failed to identify any other available position for which she was qualified and to which she could have been reassigned as a reasonable accommodation, and because indefinite extension of plaintiff's leave of absence would not have constituted a reasonable accommodation, defendant is entitled to summary judgment on plaintiff's ADA failure to accommodate claim.

**B.  Defendant is Entitled to Summary Judgment on Plaintiff's § 1981 and Title VII Claims for Race and Color Discrimination**

Defendant argues that it is entitled to summary judgment on plaintiff's § 1981 and Title VII claims because plaintiff is unable to present evidence capable of establishing a <u>prima facie</u> case of employment discrimination based on her race or color, or capable of establishing that defendant's stated reason for failing to provide plaintiff a reasonable accommodation were not true but, instead, pretexts for race or color discrimination.[53] Asserting that she is African-American, and that defendant has a past history of accommodating non-African-American nurses when disabilities prevent them from performing essential functions of their jobs, but refusing to accommodate similarly situated African-American nurses, plaintiff argues that she has presented evidence capable of establishing a <u>prima facie</u> case, and that defendant has provided no legitimate, non-discriminatory reason for treating African-American nurses differently than non-African-American nurses.[54]


1.  <u>Applicable Law</u>

Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give

---

[53]Defendant's MFSJ, Docket Entry No. 15, pp. 19-24.

[54]Plaintiff's Opposition, Docket Entry No. 22, pp. 18-20, ¶¶ 30-34.

> evidence, and to the full and equal benefit of all laws
> and proceedings for the security of persons and property
> as is enjoyed by white citizens, and shall be subject to
> like punishment, pains, penalties, taxes, licenses, and
> exactions of every kind, and to no other.

42 U.S.C. § 1981. Although § 1981 does not use the word "race," the Supreme Court has construed this section to forbid all race discrimination in the making of contracts. Runyon v. McCrary, 96 S. Ct. 2586, 2593, 2596-2597 (1976). Title VII prohibits an employer from intentionally discriminating against an employee on the basis of race or color. 42 U.S.C. § 2000e-2(a)(1). See also Davis v. Fort Bend County, 765 F.3d 480, 485 (5th Cir. 2014).

Claims of employment discrimination brought under § 1981 and Title VII can be proven through direct or circumstantial evidence. See Lawrence v. University of Texas Medical Center at Galveston, 163 F.3d 309, 311 (5th Cir. 1999) (per curiam) (recognizing that claims of employment discrimination brought under § 1981 and Title VII are analyzed under the same evidentiary framework). Direct evidence of discrimination "is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Rachid v. Jack In The Box, Inc., 376 F.3d 305, 310 n. 6 (5th Cir. 2004) (quoting Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002), cert. denied, 123 S. Ct. 2572 (2003)). Plaintiff has not cited direct evidence of discrimination and does not argue that this is a direct evidence case.

Plaintiff may establish a discrimination claim under either § 1981 or Title VII based on circumstantial evidence by using the framework set forth in <u>McDonnell Douglas v. Green</u>, 93 S. Ct. 1817 (1973). <u>See</u> <u>Lawrence</u>, 163 F.3d at 311. This framework is a burden-shifting exercise pursuant to which plaintiffs carry the initial burden of demonstrating a <u>prima facie</u> case of discrimination. To establish a <u>prima facie</u> case based on race or color plaintiff must show that (1) she belongs to a protected class, (2) she was qualified for her job or the job she desired; (3) she suffered an adverse action; and (4) defendant treated her less favorably than similarly situated employees outside her protected class. <u>See</u> <u>Lawrence</u>, 163 F.3d at 312. If plaintiff establishes a <u>prima facie</u> case the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse action. If defendant articulates a legitimate, nondiscriminatory reason for the adverse action, the presumption of discrimination disappears, and the plaintiff must present evidence capable of proving that (1) defendant's stated reason for the adverse action is not true, but is instead a pretext for discrimination (pretext alternative), or (2) defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is her race or color (mixed-motives alternative). <u>Laxton v. Gap Inc.</u>, 333 F.3d 572, 578 (5th Cir. 2003) (pretext); <u>Desert Palace, Inc. v. Costa</u>, 123 S. Ct. 2148, 2154-55 (2003) (mixed-motives).

-30-

2.   <u>Application of the Law to the Undisputed Facts</u>

Defendant does not dispute that plaintiff belongs to a protected class, or that the failure to provide her a reasonable accommodation constitutes an adverse employment action. Instead, defendant argues that plaintiff is unable to establish a <u>prima facie</u> case because following the onset of her disability she was no longer qualified for her position as an RN II, and because plaintiff cannot establish that she was treated less favorably than similarly situated employees outside of her protected class. Defendant also argues that even if plaintiff could establish a <u>prima facie</u> case, defendant had legitimate, non-discriminatory reasons unrelated to her race or color for failing to provide her a reasonable accommodation, i.e., there was no reasonable accommodation that would have enabled plaintiff to perform the essential functions of her position as an RN II, and there were no available positions for which plaintiff was qualified to which she could have been reassigned as a reasonable accommodation.


(a)  Plaintiff Fails to Present Evidence Capable of
     Establishing a <u>Prima Facie</u> Case

Without disputing that she was no longer qualified for her position as a RN II or that she was not qualified for any other position that defendant had available, plaintiff asserts that defendant treated her less favorably than similarly situated employees outside of her protected class because defendant provided

-31-

reasonable accommodations to non-African-American nurses who were unable to perform essential functions of their jobs due to disabilities but failed to provide reasonable accommodations to African-American nurses such as her.[56]

### (1)   Plaintiff Was Not Qualified for Any Position

For the reasons stated in § III.A.2(b), above, the court has already concluded that plaintiff has failed to cite any evidence capable of establishing either that she was qualified for her position as a RN II, or that she was qualified for reassignment to any other available position as a reasonable accommodation for the physical limitations caused by her disability.  The court therefore concludes that plaintiff has failed to establish the second element of her prima facie case, i.e., that she was qualified for the position she held or for any other position to which she could have been reassigned as a reasonable accommodation for her disability.

### (2)   Plaintiff Was Not Treated Less Favorably than Similarly Situated Employees Outside of Her Protected Class

"Similarly situated employees are employees who are treated more favorably in nearly identical circumstances; the Fifth Circuit defines similarly situated narrowly." Lopez v. Kempthorne, 684

---

[56]Id. at 18-19 ¶¶ 30-32.

F.Supp.2d 827, 856-57 (S.D. Tex. 2010) (internal citations and quotations omitted).  The Fifth Circuit has stated:

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.  And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.  If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of employment discrimination analysis.

Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009).

As evidence that defendant treated similarly situated employees outside of her protected class more favorably than defendant treated her, plaintiff cites her own affidavit and the affidavit of Monica Watson.  Plaintiff stated in her affidavit:

> Examples of nurses . . . that were accommodated are: . . . (b) D---(Asian), a RN II who worked on the same unit as I did, and was accommodated with a non-patient care position when she developed complications of her pregnancy; (c) R---S--- (Hispanic), a RN II on the same unit as me, who was accommodated with a non-patient care position when she developed a wrist condition, a chronic condition and *C. Diff.*; and (d) R---J--- (Caucasian) who was accommodated when she had a broken wrist.[56]

---

[56]Affidavit of Jasmine P. Dark, Exhibit 3 to Plaintiff's Opposition, p. 3 ¶ 17, Docket Entry No. 22-3, p. 4.

Monica Watson stated in her affidavit that she is African-American who worked as a patient care assistance at the same hospital as plaintiff, that in November of 2012, when she was pregnant and suffered a hernia, her doctors restricted her from lifting over 25 pounds, she requested a reasonable accommodation, but she was told that there were no light duty assignments for her, and in December of 2012 she was discharged.[58]

The affidavit testimony on which plaintiff relies is not sufficient to raise a genuine issue of material fact for trial on her disparate treatment claim because the evidence contained therein does not show that the employees who plaintiff argues received more favorable treatment were similarly situated to her. Plaintiff's affidavit testimony shows that nurses D. and R.J. were provided accommodations for conditions that could reasonably be expected to last for limited periods of time, i.e., pregnancy, and a broken wrist, and were therefore not disabling. Although plaintiff's testimony is that nurse R.S. was provided an accommodation for a chronic condition, plaintiff has neither identified the chronic condition, nor offered any evidence from

---

[58]Affidavit of Monica Watson, Exhibit 12 to Plaintiff's Opposition, pp. 1-2, Docket Entry No. 22-12, pp. 2-3. Defendant objects to the admissibility of Watson's affidavit, see Defendant's Reply, Docket Entry No. 25, p. 7, asserting Watson was not disclosed in Plaintiff's Initial Disclosures as a person with relevant knowledge, but fails to argue that consideration of this affidavit will cause defendant to suffer any prejudice. Accordingly, defendant's objection to the court's consideration of this affidavit for purposes of ruling on the pending motion for summary judgment will be overruled.

which a reasonable fact finder could conclude that the chronic condition was disabling or prevented R.S. from performing patient care indefinitely. Moreover, plaintiff has not presented evidence that any of the non-African-American nurses to whom she argues defendant provided reasonable accommodations, were like her, nurses with less than two years experience who were unable to have any contact with patients for an indefinite period of time.

Asserting that Watson was employed in a different position than plaintiff, and was discharged under different circumstances for different reasons, defendant objects to Watson's affidavit as irrelevant and therefore inadmissible under Federal Rule of Civil Procedure 402.[59]  Regardless of whether Watson' affidavit is admissible under Rule 402, the evidence contained therein is not capable of raising a genuine issue of material fact for trial because it is not evidence from which a reasonable fact finder could conclude that plaintiff was treated less favorably than nurses who were not members of her protected class.

Because plaintiff has failed to cite any evidence from which a reasonable fact finder could conclude that she was treated less favorably than similarly situated employees who were not members of her protected class, the court concludes that plaintiff has failed to establish the fourth element of her prima facie case.

---

[59]Defendant's Reply, Docket Entry No. 25, p. 7.

      (b)   Defendant Proffers Legitimate, Non-Discriminatory Reasons for Failing to Provide Plaintiff a Reasonable Accommodation

Defendant asserts that it had legitimate, non-discriminatory reasons unrelated to plaintiff's race or color for failing to provide her a reasonable accommodation, i.e., there were no reasonable accommodations that would have enabled plaintiff to perform the essential functions of her job as an RN II, and there were no available positions for which plaintiff was qualified to which she could have been reassigned as a reasonable accommodation.

      (c)   Plaintiff Fails to Present Evidence Capable of Establishing that Defendant's Legitimate, Non-Discriminatory Reasons for Failing to Provide Her a Reasonable Accommodation Were Pretextual or Motivated by Discrimination Based on Race or Color

Plaintiff has not cited any evidence from which a reasonable fact finder could conclude that defendant's proffered legitimate, nondiscriminatory reason for not accommodating her, i.e., that there was no reasonable accommodation that would have enabled plaintiff to perform the essential functions of her position as an RN II, and there were no available positions for which plaintiff was qualified to which she could have been reassigned as a reasonable accommodation, were pretexts for race or color discrimination.  Instead, plaintiff merely asserts that

> [d]efendant has provided no non-discriminatory, legitimate reason behind its failure to accommodate African American nurses under situations similar to non-African American nurses . . . that [d]efendant did

-36-

provide accommodations for when they were unable to perform essential functions of their job.[60]

Because plaintiff has not cited any evidence capable of satisfying all four elements of her _prima facie_ case of disparate treatment, or capable of establishing that defendant's stated reasons for failing to provide her a reasonable accommodation are not true but, instead, pretexts for discrimination based on her race or color, defendant is entitled to summary judgment on plaintiff's claims for employment discrimination based on race and color in violation of § 1981 and Title VII.

### IV.   __Objections to Plaintiff's Summary Judgment Evidence__

Defendant's Reply in Support of Its Motion for Final Summary Judgment contains objections to Exhibits 2, 4, 5, 7, 10, 11, and 12 attached to plaintiff's Opposition to Defendant's Motion for Summary Judgment.[61]   For the reasons stated in note 14, above, defendant's objections to Plaintiff's Exhibit 2 will be overruled. For the reasons stated in note 13, above, defendant's objections to Plaintiff's Exhibit 4 will be overruled.  For the reasons stated in n. 40, above, defendant's objections to Plaintiff's Exhibit 7 will be overruled.  For the reasons stated in n. 58, above, defendant's objections to Plaintiff's Exhibit 12 will be overruled.  Because the court has not considered Plaintiff's Exhibits 5, 10, or 11, defendant's objections to these exhibits will be declared moot.

---

[60]Plaintiff's Opposition, Docket Entry No. 22, p. 19 ¶ 33.

[61]Defendant's Reply, Docket Entry No. 25, pp. 5-7.

## V. **Conclusions and Order**

For the reasons explained in § III, above, the court concludes that Houston Methodist San Jacinto Hospital is entitled to summary judgment on all of Dark's claims.  Accordingly, Defendant's Motion for Final Summary Judgment (Docket Entry No. 15) is **GRANTED**.

For the reasons explained in § IV, above, the objections asserted in Defendant's Reply in Support of Its Motion for Final Summary Judgment (Docket Entry No. 25) to Plaintiff's Exhibits 2, 4, 7, and 12 are **OVERRULED**, and to Plaintiff's Exhibits 5, 10, and 11 are **MOOT**.

**SIGNED** at Houston, Texas, on this 12th day of May, 2016.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE